VICKSBURG S. & P. R. R. Co. *v.* W. C. PORTERFIELD.

[60 South. 652.]

1. MALICIOUS PROSECUTION. *Evidence of malice. What law governs. Courts. Incomplete disclosures.*

Where the tort upon which suit for malicious prosecution is based occurred in Louisiana, the decisions of the supreme court of that state upon the substantive law will be controlling in the courts of this state.

2. MALICIOUS PROSECUTION. *Malice. Incomplete disclosures.*

In an action for damages for malicious prosecution where there is nothing in the conduct of the agents of defendant which even suggests a purpose to conceal anything, and the significance of the information not disclosed is a mere matter of opinion, the fact that such agent disclosed to the district attorney information tending to show another guilty of a crime, but failed to disclose all his information, did not show him to be actuated by malice or bad faith.

3. MALICIOUS PROSECUTION. *Malice. Peremptory instruction.*

Where in a suit for damages for malicious prosecution the evidence as a whole affirmatively shows the entire absence of malice, there is no room for inference or conjecture and nothing to submit to the jury's consideration and a peremptory instruction should be given for the defendant.

APPEAL from the circuit court of Warren county.
HON. H. C. MOUNGER, Judge.

Suit by W. C. Porterfield against the Vicksburg, Shreveport & Pacific Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Hirsh, Dent & Landau,* attorneys for appellant.

This particular brief on behalf of the appellant shall be solely directed to the proposition that the circuit court erred in declining to peremptorily instruct the jury to find a verdict for the defendant below. Inasmuch as the acts complained of by the plaintiff occurred in the state of Louisiana, we respectfully submit that the rights of the parties to this litigation are determinable by the laws of that state:

"Whether or not an *ex delicto* cause of action exists upon a state of facts is to be determined by the law of the place where the matters complained of occurred." *Pullman P. Car Co.* v. *Lawrence,* 74 Miss. 782; *Runt* v. *Illinois Central R. R. Co.,* 88 Miss. 575; *Illinois Central R. R. Co.* v. *Harris,* 29 So. 760.

The rights of the parties being thus governed by the laws of Louisiana, we shall, in this brief, confine our discussion practically, if not, indeed, entirely, to the decisions of the supreme court of that state.

We respectfully submit that under the undoubted laws of that commonwealth, as frequently announced by the supreme court of Louisiana, the plaintiff in this suit is without the slightest standing in court and that, as hereinbefore suggested, a verdict should have been directed in favor of the defendant.

The general principles of law, applicable to such cases, recognized by the Louisiana courts, are, in many respects, the same as those which obtain elsewhere; but we

venture the assertion that no courts of any state are broader, more liberal, or more reasonable in applying these principles so as to prevent mulcting in damages persons who honestly charge others with crime than are the courts of Louisiana.

The supreme court of Louisiana has, in several cases, taken occasion to say and reiterate that suits such as this "have never been favored," and to announce that to be the settled policy of the state of Louisiana.

In the case of *Dearmond* v. *St. Amant*, decided by the supreme court of Louisiana, reported 4 So. 72, 40 La. Ann. 374, which was a suit brought by the plaintiff, who had been charged with arson and subsequently discharged, the court, in holding the defendant not liable, says:

"If the plaintiff is innocent of this heinous charge, as the law presumes him to be, he has undoubtedly suffered a great wrong; and for him to be compelled to bear it without redress is indeed a hardship, but it is one of those sacrifices which the individual is required to make to the interest of society. It is not only the lawful right, but the civil duty, of every citizen to set on foot criminal proceedings whenever he believes honestly and on reasonable grounds that a crime has been committed. The social interests require, and the law invites, him thus to aid the state in the discovery and punishment of crime, and it would be equally unjust and impolitic to make him a guarantor of the success of the prosecution, or to make its failure an actionable wrong. Hence the law wisely holds the prosecutor harmless in such a case, notwithstanding the acquittal of the person accused, unless his conduct has been tainted by two concurrent vices: (1) malicious motives; (2) want of probable cause, i. e., absence of reasonable grounds for believing in the truth of the charge made. From the huge volume of testimony in this case we have selected and detailed a few of the pertinent and indisputable facts, the effect of which is not, in our judgment, destroyed by any other

of the numerous facts and circumstances proved. It would serve no useful purpose to discuss the latter. Suffice it to say that the record fully satisfied us that the defendant acted throughout in good faith, from honest motives, on probable and reasonable grounds and without malice, expressed or implied.

In the case of *Sandoz* v. *Veazie,* decided by the supreme court of Louisiana, reported in 106 Louisiana Reports, 30 So. 767, which was a suit for damages for malicious prosecution, the court said:

"Action of this sort has never been favored. A clear case must be made out of a perversion of the forms of justice to the satisfaction of private malice and the willful oppression of the innocent, in order to sustain them."

In the case of *Laville* v. *Biguenaud,* which was an action for damages for malicious prosecution, and for public defamation, in which the plaintiff was arrested and subsequently discharged, the court said (15 La. Ann. 605):

"The well-established rule of practice, that an action of this kind cannot be sustained except on proof of malice in the defendant, and of want of probable cause for the prosecution of which plaintiff complains, is founded on the soundest reasons of public policy.

"The individual, upon whose oath the warrant issues for the arrest of another as a criminal, is not considered in law as a party plaintiff in the criminal prosecution, but as a witness for the state—in many cases a witness by compulsion—discharging a duty to the commonwealth, in a matter of public interest. To treat this individual as warranting the success of the prosecution, at the risk of his fortune, would have a direct tendency to discourage the prosecution of offenders against the laws, and to insure the impunity of crime. Actions of this sort have, therefore, never been favored. A clear case must be made out, of the perversion of the forms of justice to the satisfaction of private malice and the willful oppression of the innocent.

"Public interest and a proper administration of justice require that actions for malicious prosecution should not be maintained without clear proof of malice and want of probable cause."

*Kearney* v. *Holmes,* 6 La. Ann. 373; *Girot* v. *Graham,* 41 La. Ann. 6, So. 815. *Garnier* v. *Barnard,* 45 La. Ann. ——, 14 So. 189; *Brelet* v. *Mullen,* 44 La. Ann. ——, 10 So. 865.

The language hereinbefore quoted from the decision in the case of *Dearmand* v. *St. Amant* is quoted, with approval, by the supreme court of Louisiana in the case of *Enders* v. *Boisseau,* decided January 22, 1900, reported 52 La. Ann. ——, 27 So. 546.

We respectfully submit that, in our opinion, the view of the Louisiana court that "a clear case must be made out of a perversion of the forms of justice to the satisfaction of private malice and the willful oppression of the innocent" (*Sandoz* v. *Veazie, supra, Leville* v. *Birguenaud, supra*) is safe, sane and sound. The action for malicious prosecution is not given merely for the purpose of compensating a man who, although innocent, has been charged with a crime and acquitted, but, as the very designation of the action implies, is conferred upon a person who, though innocent, has been "maliciously" charged with the commission of a crime under circumstances under which there was no "probable cause" whatever to believe in the guilt of the accused. Whenever a person, instrumental in the institution of a criminal prosecution, has acted honestly, and without malice toward the accused, such person is not liable in damages to the accused, however innocent the latter may be, and however great a hardship he may have suffered as a result of such prosecution. Any other rule would, necessarily, defeat the ends of justice, for few men, indeed, would be so rash as to charge another with crime, however sure they may be of the guilt of the suspect, if, to do so, they must guarantee the success of the prosecution "at the risk of their fortunes."

In order to recover, therefore, the plaintiff must show "malice" on the part of the defendant and "want of probable cause" for the prosecution. It is not sufficient to show malice, merely, or want of probable cause, merely, but both must concur. Even if a defendant be actuated· by malicious motives, yet of there was probable cause to believe the accused guilty, no action can be maintained; so, if there was no probable cause to believe the accused guilty, yet if the defenant was not animated by malice, an action will not lie.

"In the absence of facts showing malice and want probable cause, which are essential ingredients, no recovery can be had for indemnity." *Girot* v. *Graham,* 41 La. Ann. ——, 6 So. 815.

"It is the malice composed of bad feeling, and the knowledge of having no just cause of action, which create liability." *Girot* v. *Graham, supra; Kearney* v. *Holmes,* 6 La. Ann. 373; *Garner* v. *Bernard,* 14 So. 189.

"In the absence of satisfactory and clear proof of malice, and want of probable cause for the prosecution, no recovery can be had for indemnity, both being the essential ingredients of malicious prosecution." *Garnier* v. *Bernard,* 45 La. Ann. ——, 14 So. 189.

In order to maintain an action for malicious prosecution two things must concur: 1 . The motive of the party instituting the prosecution must have been malicious. 2. The suit or proceeding complained of must have been instituted without any probable cause therefor. It is the malice composed of bad feeling, and the knowledge of the want of probable and just cause, which create a liability. Public interest and a proper administration of justice require that actions for malicious prosecution should not be maintained without clear proof of malice and want of probable cause." *Enders* v. *Boisseau,* 52 La. Ann. ——, 27 So. 549.

"Probable cause consists in an honest belief, based on reasonable grounds, in the guilt of the person accused." *Enders* v. *Boisseau,* above referred to.

In the case of *Brelet* v. *Mullen,* 10 So. 865, 44 La. Ann.
——, the supreme court of Louisiana, speaking through
its chief justice, said:

"In order that the plaintiff may maintain this action
(malicious prosecution), three things must concur:  1.
The motive of the party instituting or prosecuting the
suit or proceeding must have been malicious.  2.  The
suit of proceeding complained of must have been institu-
ted without any probable cause therefor.  3.  The suit
must have terminated.  It is the malice composed of bad
feeling and the knowledge of the want of a probable and
just cause which create liability.  Public interest and a
proper administration of justice require that actions for
malicious prosecutions should not be maintained without
clear proof of malice and want of probable cause.  Courts
cannot inflict damages on a party for resorting in good
faith to law for the protection of his rights rather than
taking the chance of a recourse to arms, or tamely aban-
doning the fields to an usurper," citing numerous cases
decided by the supreme court of Louisiana, as follows:
*Girot* v. *Graham,* 41 La. Ann. 511; *Maloney* v. *Doane,* 15
La. 278; *McCormick* v. *Conway,* 12 La. Ann. 53; *Lisk* v.
*Mathis,* 11 La. Ann. 419; *Godfrey* v. *Soniat,* 33 La. Ann.
315; *Coleman* v. *Insurance Co.,* 36 La. Ann. 92; *Dear-
mond* v. *St. Amant,* 40 La. Ann. 374; *Macias* v. *Loria,* 41
La. Ann. 301; *Ivers* v. *Ryan,* 42 La. Ann. 32.

We respectfully submit that:  First, there was no mal-
ice attributable to defendant in this case; second, that
there was such "probable cause" as is required by law.

*Henry & Canizaro,* attorneys for appellee, filed an
elaborate brief too long for publication.

COOK, J., delivered the opinion of the court.

This is a suit for malicious prosecution against appel-
lant, tried by the circuit court of Warren county, which
trial resulted in a judgment in favor of plaintiff below,
appellee here.

Boiling down the evidence taken at the trial, it amounts to about this: The appellant railroad company was operating a relay station at Delta, La., on the west side of the Mississippi River opposite Vicksburg. The loaded freight cars destined for points west of Delta were ferried across the river and delivered to the yard crew of the company at Delta, to be by them attached to outgoing trains. Previous to the occurrence of the events out of which this suit arises, a series of burglaries had been committed upon the cars of the company while in the Delta yards. On April 24, 1909, a car of merchandise was broken open, either while in Vicksburg, or in the yards at Delta. It is probable from the evidence that the car was first broken and entered before it reached Delta, and again broken and entered after it reached Delta. The superintendent of the railroad company was notified by wire, of the burglary shortly after it was discovered. The superintendent instructed the division counsel and trainmaster to repair to the scene to make a thorough investigation of the crime. The trainmaster had made some investigations before he was joined at Vicksburg by Mr. Stubbs, division counsel. Witnesses were sent for and interrogated on the subject, and were asked to tell all they knew of the circumstances. All of the crew in charge of the robbed train were examined, except two—the engineer and fireman of the switch engine. Mr. Stubbs testified that two of the witnesses examined by him professed to know nothing about the affair. No reason is given for not examining the engineer and fireman.

The testimony of two white men, employees of the company, was reduced to writing and sworn to by the witnesses. The evidence clearly authorized an impartial, prudent, and reasonable man to believe appellee was guilty of either robbing the car, or aiding and abetting others in the job.

After securing all the evidence they thought was important, and of which they had any knowledge, the train-

master and division counsel called upon the district attorney of the district in Louisiana which embraced in its limits the venue of the crime. The affidavits of the two white men, whose reputations for truth and veracity had been investigated and found good by Mr. Stubbs, were submitted to the district attorney, and the district attorney was advised of other facts not contained in the affidavits; but he was not advised that the two negro witnesses examined by Mr. Stubbs had said that they knew nothing about the robbery. It is claimed that it was their duty· to have disclosed this circumstance, because these negroes were in a position to have seen all that the two white witnesses could have seen, and they having seen nothing this was a circumstance discrediting the white witnesses.

It is also insisted that the district attorney should have been advised that Mr. Stubbs had not seen fit to examine the engineer and fireman of the switch engine hauling the robbed car; they having had the same opportunity to observe the· same things which the two white witnesses claimed to have seen. It is also contended that the representatives of the railroad company were negligent, in that a more extended· examination into the facts would have demonstrated that there was no probable cause for suspecting appellee. It is insisted that there were facts, easily obtainable, which would have convinced any prudent and reasonable man of appellee's innocence.

When the reliability and character of the two white witnesses making the affidavits were discussed with the district attorney, he said that one of the witnessess, Mr. J. A. Perkins, was well known by him, and that he regarded his integrity beyond question.

The conference with the district attorney being concluded, the district attorney advised Mr. Gabrel, the trainmaster, to make an affidavit against appellee charging him with the crime. Mr. Stubbs then told the district attorney that the company represented by him did not de-

sire to assume the role of a prosecutor, but merely desired to lay before him the result of their investigations and leave the question of a prosecution to be determined by him. The district attorney thereupon unhesitatingly filed an information against appellee, which, by the Louisiana law, is equivalent to an indictment. Upon the trial appellee was acquitted by a jury, and brings this suit for malicious prosecution.

One more observation: Mr. Porterfield is shown to have been an old and trusted employee of the company, and was possessed of an excellent reputation for honesty, and it is claimed all of this was known to the company when this prosecution was instituted.

It is a fact, established by this record, that no actual malice is proven; on the contrary, it seems manifest that the action taken by the representatives of the company was not prompted by malice. If malice is proven at all, it is by inference, and upon the theory that no probable cause existed warranting the institution of a prosecution.

It is earnestly urged that the jury was warranted in finding a lack of probable cause, and in so doing they had the right to infer malice, although it be admitted that there was, in fact, no malice. This is the construction given to the argument of counsel for appellee.

The alleged tort upon which this suit is based occurred in Louisiana, and the decisions of the supreme court of that state upon the substantive law will be controlling with this court. It is contended, however, that upon all matters of procedure and practice the law of this state will be followed, and it is said that the supreme court of Louisiana, upon appeal, decides the facts as well as the law; whereas this court will not disturb the verdict of a jury when the trial court has submitted for their decision conflicts in the evidence. No difference in this regard is to be found in the opinions of the Louisiana court. The practical application of the rule may be different in the two jurisdictions, but upon this we are not advised.

*In Laville* v. *Biguenaud,* 15 La. Ann. 605, wherein an action for mlaicious prosecution was being discussed, the court said: "The well-established rule of practice that an action of this kind cannot be sustained, except on proof of malice in the defendant and of want of probable cause for the prosecution of which plaintiff complains, is founded in the soundest reasons of public policy. Public interest and a proper administration of justice require that actions for malicious prosecution should not be maintained without clear proof of malice and want of probable cause."

Again, in *Dearmond* v. *St. Amant,* 40 La. Ann. 374, 4 South. 72, speaking of the prosecutor in a case for malicious prosecution, the court said: "The social interests require, and the law invites, him thus to aid the state in the discovery and punishment of crime; and it would be equally unjust and impolitic to make him a guarantor of the success of the prosecution, or to make its failure an actionable wrong. Hence the law wisely hold the prosecutor harmless in such a case, notwithstanding the acquittal of the person accused, unless his conduct has been tainted by two concurrent vices: (1) malicious motives; (2) want of probable cause—i. e., absence of reasonable grounds for believeing in the truth of the charge made. From the huge volume of testimony in this case we have selected and detailed a few of the pertinent and indisputable facts, the effect of which is not, in our judgment, destroyed by any of the numerous facts and circumstances proved. It would serve no useful purpose to discuss the latter. Suffice it to say that the record fully satisfied us that the defendant acted throughout in good faith, from honest motives, on probable and reasonable grounds, and without malice, expressed or implied."

In *Garnier* v. *Bernard,* 45 La. Ann. 1265, 14 South. 189, this language is employed: "It is the malice composed of bad feeling and the knowledge of the want of proba-

ble and just cause which create a liability. Public interest and a proper administration of justice require that actions for malicious prosecution should not be maintained without clear proof of malice and want of probable cause.''

In *Mosley* v. *Yearwood et al.,* 48 La. Ann. 334, 19 South. 274, this rule of law is thus announced: ''The law presumes that probable cause existed until the party aggrieved can show to the contrary; hence he is bound to show the total absence of probable cause.''

These and similar announcements of the law may be found in numerous cases decided by the supreme court of Louisiana. Suits for malicious prosecution are somewhat rare in this state, and very little can be found upon the subject in our books. An exhaustive examination of the decisions of the courts of the several states fails to discover a note of discord in the observations of the Louisiana court upon the law governing the trials of suits based upon malicious prosecutions.

It must be conceded, upon principles of sound public policy, and from the standpoint of exact and even-handed justice, that a citizen, or corporation, when acting in good faith and without malice, should be commended rather than penalized for aiding the officers of the law in ferreting out and bringing to the bar of the courts offenders against the criminal laws of the state.

It is not the law that every clew must be followed and critically examined before persons whose property has been stolen dare consult the officer charged with the prosecution of criminals. Whenever it appears from the information obtained that there is a reasonable ground to suspect that a certain person is connected with an offense against the law, it is natural and proper to consult with and lay before the proper authorities all of the incriminating circumstances against the suspect. Of course, it would be bad faith to intentionally conceal a knowledge of circumstances tending to show the innocence of the person under suspicion.

Even after a full disclosure of all of the evidence and the acquittal of appellee by a jury, the district attorney is far from being convinced; and, while this does not in any manner suggest the actual guilt of appellee, it does emphasize the fact that a trained lawyer, accustomed to estimating the value and weight of evidence, even in the light of all facts brought out in this record tending to show the entire innocence of appellee, much of which was unknown to the representatives of appellant when they interviewed the district attorney, not only says under oath that he thinks there was ample grounds for the prosecution, but goes much further. True it is that a prosecuting attorney in the role of an advocate may not be impartial, but when the battle has been fought and lost it is only fair to assume that he speaks with some degree of care and impartiality.

The district attorney's opinion was, of course, a matter to be weighed by the jury; and it cannot be said that it overcomes the verdict, but it is significant and illustrates the wisdom of the rules of law announced by the Louisiana courts and copied into this opinion.

But it is contended that the failure of appellant's agent to disclose all of the things done by them, as well as all things not done, prevents the company from falling back upon the advice of the prosecuting officer; and this contention is probably sound, in the sense that the advice of the attorney cannot be made use of as a complete answer to this suit. This contention, however, makes too much of this neglect, if neglect it was, and was possibly urged upon the trial jury with earnestness and fervor.

It is our opinion that the contention is beside the mark, for the reason that there is nothing in the conduct of the agents of the company which even suggests a purpose to conceal anything, and the significance of the information not disclosed is a mere matter of opinion; the attorney for the company evidently believing that these

things were unimportant, while attorneys for appellee take a different view.

A prosecutor cannot be penalized for a mere mistake of judgment. In the practical administration of the criminal law, if a prosecution cannot be put under way until a complete case has been made out, the present criticism of public officers for a lax enforcement of the law will be as a spring zephyr to a tropical hurricane.

We think this record clearly shows that there was absolutely no intention to do appellee a wrong, but, on the contrary, the agents of the company acted in perfect good faith and with due care and prudence. Malice cannot be proven by merely raising a question of diligence; and, while a lack of probable cause will authorize a jury to infer malice, where the motives behind the prosecution is a matter of dispute, in a case where the evidence as a whole affirmatively shows the entire absence of malice, there is no room for inference or conjecture, and nothing to submit to the jury's consideration.

The case should have been taken from the jury by peremptory instruction for defendant; and therefore the judgment is reversed and cause dismissed.

*Reversed and dismissed.*