425 So.2d 336 (1982)
Alva Z. ALBRIGHT, Plaintiff-Appellant,
v.
James A. PRENTICE, et al., Defendants-Appellees.
No. 82-379.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
Rehearing Denied February 4, 1983.
Writ Denied March 25, 1983.
*337 Morris Borenstein, New Orleans, for plaintiff-appellant.
Laird & Buck, Martin L. Laird, III, Alexandria, for defendants-appellees.
Before DOMENGEAUX, FORET and LABORDE, JJ.
LABORDE, Judge.
This appeal involves a suit by Alva Z. Albright against Leroy Higginbotham, Jr., James A. Prentice, H.P. Equipment Company (H.P.), Al Albright, Inc. and NFI, Inc. In his prayer, Albright asked that "all contracts or letters of assignment between petitioner and (the defendants) be declared null and void and without legal effect". He also asked the defendants be cast in damages in the amount of $1,500,000.00 for false arrest, loss of business reputation, conversion of personal property, loss of profits, lost wages, lost dividends, mental and emotional distress and suffering and slander. After a hearing, the trial judge granted judgment in favor of the defendants and dismissed Albright's demands against all defendants. Albright appeals. We affirm.
The issues raised on appeal are:
1) Whether or not the trial court erred in denying Albright the right to inspect certain books of H.P.;
2) Whether or not the trial court erred in finding that the articles of incorporation superceded the oral pre-incorporation agreement;
3) Whether or not the trial court erred in finding the assignment made by Al Albright, Inc. to H.P. to be valid;
4) Whether or not Albright as a shareholder can personally sue for damages resulting from the mismanagement of Al Albright, Inc.;
5) Whether or not the trial court erred in finding that Albright had received sufficient consideration in exchange for assigning his patent rights to Al Albright, Inc.; and
6) Whether or not Albright is entitled to damages for false arrest.
In the latter part of 1972, Albright sought out Higginbotham and Prentice for the purpose of having them finance the development and construction of a timber harvesting machine. After some discussion, Al Albright, Inc. was formed. In the articles of incorporation, Albright was to receive 50% of the stocks, but only one-third of the voting shares. Higginbotham and Prentice were each to receive 25% of the stocks and one-third of the voting stocks. Higginbotham and Prentice paid $15,000.00 into Al Albright, Inc. and advanced Albright, an additional $5,000.00 to cover his expense of moving to Alexandria. Albright assigned his patent rights to certain machines to Al Albright, Inc. The corporate office was located on the Lake Charles Highway south of Alexandria. The operation was a financial failure, and by July of 1973, it was apparent that additional funds would be needed. A meeting of the board of directors was held on July 20, 1973. They authorized Al Albright, Inc. to convey the exclusive right of distribution of these machines to H.P. In return H.P. agreed to pay reasonable research and development expenses, either in the form of cash advances or direct payment of invoices. Albright worked for Al Albright, Inc. until *338 about September of 1979 when he quit in a dispute over the purchase of a house. Subsequently, this suit was filed on behalf of Ava Z. Albright personally.

RIGHT OF DISCOVERY
The first specification of error alleges that Albright was denied the right to inspect the books of H.P. Reference is made to a minute entry of July 13, 1981. That minute entry was made pursuant to an opposition to a motion to produce documents for reproduction. After a hearing, the Court relieved the defendant, H.P. from complying with the following requests:
# 25) That H.P. furnish its Federal and State income tax records for the tax years 1972 through 1980.
# 26) That H.P. furnish the record of social security taxes paid by it during the tax years 1972 through 1980.
# 27) That H.P. furnish its checking and savings account records from November 1, 1972 through June 29, 1981.
# 29) That H.P. furnish all records of its expenses incurred wherein records of the operating expenses of H.P. were kept, during the period from November 1, 1972 through June 29, 1981.
# 30) That H.P. furnish all receipts and/or other records reflecting the corporate income of H.P. during the period from December 1, 1972 through June 29, 1981.
# 32) That H.P. furnish complete records of all salaries, commissions or other monies paid to Higginbotham or Prentice, during the period from November 1, 1972 through June 29, 1981.
# 35) That H.P. supply a complete inventory of all production facilities and other capital present at its present main place of doing business at the present time, that belong to H.P.
H.P. was required to comply with the request for production contained in all other paragraphs relating to it.
The trial court has reasonable discretion to refuse or limit discovery of matters not relevant to the issues, unreasonably vexatious or tardily sought which might delay the trial. Michigan Wis. Pipe L. Co. v. Sugarland Develop. Corp., 221 So.2d 593 (La.App. 3d Cir.1969).
H.P. Equipment Company urges that the requested information contains materials totally unrelated to the transactions between H.P. and Al Albright, Inc. Also they argue that the identical information sought from the income tax returns and other accounts is being furnished in the records they are required to produce under other sections of the subpoena. While we agree that liberality of pretrial discovery should be encouraged, it must not be fostered without regard to the right of the party against whom it is invoked to be protected against undue hardship, loss or damage. LSA-C.C.P. Art. 1426.
From our review of the record, we conclude the trial judge did not abuse his discretion in limiting the scope of discovery.

ARTICLES OF INCORPORATION
Albright contends that there was some sort of oral agreement between him, Prentice and Higginbotham prior to the formation of Al Albright, Inc. and that the stock structure of Al Albright, Inc. violated this alleged agreement. He contends that the pre-incorporation agreement provided he would own one-half (½) of the company's stock including one-half (½) of the voting rights. Therefore, as a result of the alleged fraud on the part of Higginbotham and Prentice in drawing up the articles of incorporation, he received only one-third (1/3) of the voting rights of the corporation.
Albright signed the articles of incorporation of Al Albright, Inc. This charter and stock structure was prepared by Senator Ned Randolph, a respected attorney in Alexandria. A party who signs a written instrument is presumed to know its contents. Starns v. Ducote, 254 So.2d 301 (La. App. 3rd Cir. 1971).
The standard of appellate review applicable here is stated in Canter v. Koehring Company, 283 So.2d 716 (La.1973):

*339 "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error."
Manifest error was interpreted by the Louisiana Supreme Court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978):
"Manifestly erroneous," in its simplest terms, means "clearly wrong." We said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong. Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong "(manifestly erroneous)."
The record disclosed the following: Senator Randolph mailed the stock certificates to the various stockholders of Al Albright, Inc.; he included with the stock certificates a letter fully explaining the stock structure; while under cross-examination, Mr. Albright admitted that Senator Randolph explained the stock structure to him while he was in Senator Randolph's office.
From the above, we hold that the trial court was not manifestly erroneous in its conclusion that Albright knew the contents of the articles of incorporation when he signed it. Therefore, we conclude that the articles of incorporation are valid and that they supercede any prior oral agreement between the parties.

ASSIGNMENT BY AL ALBRIGHT, INC. TO H.P.
Albright contends that the assignment of exclusive distribution rights of certain patents belonging to Al Albright, Inc. to H.P. were invalid. The assignment to H.P. occurred on July 20, 1973, at a meeting of the board of directors of Al Albright, Inc. Albright contends that he had no notice of this meeting. Therefore, the transfer is void under LSA-R.S. 12:73. The record does not support this contention. A waiver of notice signed by Albright was introduced into evidence. This waiver of notice specifically stated the purpose of the meeting.
Albright alleges that the signature on the waiver is not genuine. Therefore, he contends the trial court erred in finding the assignment valid. On review the appellate court should not disturb factual findings of the trial court in the absence of manifest error. Canter v. Koehring Company, supra; Arceneaux v. Domingue, supra.
The testimony of a handwriting expert showed that Albright's signature on the waiver of notice in question was genuine. This testimony was not controverted by Albright. Therefore, we hold the trial court did not commit manifest error in holding that Albright had notice of the meeting in question.
Albright further contends in this regard that the assignment was invalid due to the fact that Higginbotham and Prentice were officers of H.P. and that this interest in H.P. was not disclosed to him. Albright bases his contention on LSA-R.S. 12:84. A review of this statutory language reveals that an officer can transact business with his corporation if the transaction or contract is fair as to the corporation. LSA R.S. 12:84, in extract, is here quoted:
"No contract or transaction between a corporation and ... any other business... in which one or more of its directors or officers are directors or officers ... shall be void or voidable solely for this reason ... or solely because his ... votes were counted for such purpose if:
. . . . .
(3) The contract or transaction was fair as to the corporation as of the time it was authorized."
Therefore, even though Higginbotham and Prentice were officers in H.P., the transaction can be valid if the contract is fair as to the corporation. Thus, the resultant issue is one of fact. The review of the appellate court will be limited to whether the trial court committed manifest error in its factual *340 findings. Canter v. Koehring Company, supra; Arceneaux v. Domingue, supra.
A review of the record revealed the following facts: Al Albright, Inc. was in financial trouble at the time of the assignment; the assignment conveyed the exclusive right of distribution; H.P. in exchange for this right agreed to pay reasonable research and development expenses, either in the form of cash advances or direct payment of invoices.
From our review, we hold that the assignment was fair as to the corporation. Therefore, we conclude the trial court did not commit manifest error in holding that the assignment was valid.

RIGHT OF SHAREHOLDER TO PERSONALLY SUE
The issue is whether Albright as a shareholder can sue personally for damages resulting from the mismanagement of Al Albright, Inc. Albright alleges that he suffered damages due to acts committed by Higginbotham and Prentice for Al Albright, Inc. These complained of acts are: extensive comingling of funds; improper accounting procedure; and the assignment of rights by interested directors.
An action for mismanagement or fraud belongs to the corporation, not the stockholders. Orlando v. Nix, 171 La. 176, 129 So. 810 (La.1930). As an asset of the corporation, such a right to recover loss for mismanagement or fraud may only be asserted secondarily by a shareholder through a shareholder's derivative suit. Beyer v. F & R Oilfield Contractor, Inc., 407 So.2d 15 (La.App. 3rd Cir.1981); writ denied, 411 So.2d 451 (La. 1982).
Counsel for Albright cites no authority which allows Albright to recover personally for damages incurred through the mismanagement of Al Albright, Inc. We hold that Albright's sole remedy is through a shareholder's derivative suit.

LACK OF CONSIDERATION
Albright contends that the compensation he bargained for in exchange for assigning his patent rights to the timber harvesting machines never materialized. The bargained for compensation according to Albright was a salary. Therefore, since he was never paid a salary, he contends that the assignment of the patents to Al Albright, Inc. is invalid due to lack of consideration.
The record reveals that Albright received $72,000.00 while employed at Al Albright, Inc. Albright contends this money is not a salary but a draw, i.e. advance on future commissions. The trial court concluded that in this case the draw or salary was basically the same thing, a payment of consideration. Albright has the burden of proof which according to our review of the record he has failed to carry. Therefore, we hold the trial court did not commit manifest error in upholding the validity of the assignment to Al Albright, Inc. of Albright's patent rights.

FALSE ARREST
Albright contends he was falsely arrested by the police at the instance of Higginbotham. Due to this alleged false arrest, Albright contends he suffered damages. The facts of the arrest are as follows: Albright was arrested by Rapides Parish Sheriff officers; the officers were alerted by a silent burglar alarm; the arrest took place at the Al Albright, Inc. facility during the early morning hours; Albright had severed his employment with Al Albright, Inc. four months earlier; and Higginbotham did not learn of Albright's situation until after the arrest.
In a suit for damages for false imprisonment, Albright must show that he was arrested at the instance of defendant, who acted maliciously and without probable cause. Sundmaker v. Gaudet, 113 La. 887, 37 So. 865 (La.1905). We conclude from the above facts that Albright was arrested by the police responding to a burglar alarm instead of at the instance of Higginbotham. Therefore, we conclude the trial court was correct in denying damages for false arrest.
*341 For the above reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.